RECEIVED

APR 0 3 2006

CLERK U.S. DISTRICT COURT
ANCHORAGE. ALASKA

**ATTACHMENT B**

'04 DEC 21 PM 5 05

UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA

By _____ Deput

In Re: Writ of Body Attachment
of Harry Meyer                          )
                                        )        No. A04-0079 MJ (JDR)
                                        )
                                        )
_____                 )
                                        )
                                        )
National Labor Relations Board,         )
                                        )
            Petitioner,                 )
                                        )
                                        )
        v.                              )        No. 99-70895 (9th Cir.)
                                        )
Northpac Electric, Harry Meyer and      )
Patrick Headley, a Partnership d/b/a    )
Northland Electric,                     )
                                        )
            Respondents.                )
_____                 )


### ORDER GRANTING THE PARTIES' JOINT MOTION
### AND RECOMMENDATION TO THE
### UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
### FOR APPROVAL OF JOINT SETTLEMENT STIPULATION


Upon review of the parties' Joint Motion for Approval of

the Joint Settlement Agreement between the National Labor

Relations Board and Northpac Electric and Harry Meyer d/b/a

Northland Electric, and there being good cause, it is hereby

ORDERED THAT the joint motion for approval of the

parties' joint settlement stipulation resolving the instant

proceedings before this Court concerning the Writ of Body

35

IT IS FURTHER ORDERED THAT the 580SL Loader/Backhoe (Tractor S/N JJG0190148, Engine S/N 45131311; Trans. S/N 1027) which was physically transferred to Local 1547 of the International Brotherhood of Electrical Workers on October 21, 2004 shall remain in the custody and care of IBEW Local 1547 with the understanding that IBEW Local 1547 will maintain the backhoe in the same or better working condition as the day that it obtained physical possession of it pending final approval of this settlement by the United States Court of Appeals for the Ninth Circuit.  Pending approval by the Court of Appeals, Respondent Meyer shall retain ownership but not physical custody of the backhoe.

IT IS FURTHER ORDERED THAT the $20,000 performance bond, plus any interest should there be any, shall remain in the registry of the U.S. District Court for the District of Alaska pending final approval by the United States Court of Appeals for the Ninth Circuit in this matter.

IT IS FURTHER ORDERED THAT the $5,000 cash bail, plus any interest should there be any, shall remain in the registry of the U.S. District Court for the District of Alaska pending final approval of this settlement by the United States Court of Appeals for the Ninth Circuit.

by the terms and conditions of his release of civil

incarceration mandated by this Court on March 24, 2004 pending final approval of this settlement by the United States Court of Appeals for the Ninth Circuit.

IT IS FURTHER ORDERED THAT upon the approval by the Court of Appeals, the $20,000 performance bond, plus any interest should there be any, shall be transferred to the Board, and the $5,000 cash bail, plus any interest should there be any, shall be remitted to Respondent Meyer; and the ownership of the backhoe described above shall immediately be transferred to IBEW Local 1547.

IT IS FURTHER ORDERED THAT Respondents Meyer and Northpac Electric shall abide by the terms and conditions of the 2004-2007 Inside Agreement of the Alaska Electrical Construction between Local Union 1547 International Brotherhood of Electrical Workers and the Alaska Chapter National Electrical Contractors Association, Inc. to the extent that Respondents engage in work covered by the collective bargaining agreement.

IT IS RECOMMENDED THAT in addition to resolving the Writ of Body Attachment proceeding before this Court, that the United States Court of Appeals for the Ninth Circuit find that the parties have reach a settlement agreement purging Respondents of their contempt of court of the Court's judgment in case No. 99-70895 (9th Cir.) and have paid, as agreed, a

satisfaction of the monies owed to the Board in seeking

compliance with the 1999 judgment of the Ninth Circuit.  It is

recommended that the Court of Appeals approve the parties'

Joint Settlement Stipulation and this Order.


IT IS SO ORDERED AND RECOMMENDED


_____
U.S. Magistrate Judge John D. Roberts


Dated: December 20 , 2004


[NPEsettlementjtmot.doc]


A04-0079--MJ (JDR)   on 12/21/04
-----------------------------------------
J. JOSEPHSON
J. COOPER (USA)
J. SULLIVAN
Appeals clerk
9CCA w/cy of joint settlement stip
Finance

IN RE: WRIT OF BODY ATTACHMENT
OF HARRY MEYER

)
)
)
)
)
)

No. A04-0079 MJ (JDR)

NATIONAL LABOR RELATIONS BOARD,

PETITIONER,

v.

NORTHPAC ELECTRIC, HARRY MEYER AND
PATRICK HEADLEY, A PARTNERSHIP D/B/A
NORTHLAND ELECTRIC,

RESPONDENTS.

)
)
)
)
)
)
)
)
)
)
)
)
)

No. 99-70895 (9th Cir.)

## JOINT SETTLEMENT STIPULATION

IT IS HEREBY STIPULATED AND AGREED by the National Labor Relations Board ("Board") and Northpac Electric and Harry Meyer d/b/a, Northland Electric ("Respondent Meyer"), as follows:

### I.   Procedural History

1.   On September 14, 1999, the United States Court of Appeals for the Ninth Circuit ("Ninth Circuit") entered its judgment enforcing, in full, an April 21, 1999 decision and order of the Board finding that Respondents Northpac Electric, Harry Meyer and Patrick Headley, a partnership d/b/a Northland

•Electric (collectively, "Respondents") had violated sections

8(a)(1) and (5) of the National Labor Relations Act, 29 U.S.C. §

158(a)(1) and (5). The judgment provides, in pertinent part,

that the Respondents shall recognize and bargain with the Union,

provide the Union with requested information, make whole

employees for losses sustained because of Respondents' failure

to comply with the contract, provide the Region with records

necessary to compute backpay, post notices, and provide a sworn

compliance certification.

2.    On October 20, 2000, the Ninth Circuit entered an

order finding Respondents Northpac Electric and Harry Meyer

and Patrick Headley, a partnership d/b/a Northland Electric,

in contempt of court by default. The default contempt

adjudication requires all Respondents to, among other things,

purge themselves of their contempt by taking the following

steps:

> (a)    Within ten (10) days of issuance of the contempt
> adjudication, depositing twenty-five thousand
> dollars ($25,000) in an interest bearing account
> in the registry of the United States District
> Court for the District of Alaska in Anchorage, as
> a performance bond to be remitted upon full and
> timely compliance with the steps enumerated in
> subparagraphs (b) through (j) below;
>
> *Provided that* if, within ninety (90) days of
> issuance of the contempt adjudication,

Respondents have complied with the affirmative steps set forth in subparagraphs (b)-(j), the performance bond may be remitted to Respondents upon written notification to the Court by the Board of Respondents' full compliance. Failure to comply in whole or in part will result in the surrender of the performance bond to the Board;

(b) Posting copies of appropriate notices to Employees, together with copies of the contempt adjudication, in conspicuous places at Respondents' premises, including all places where notices to employees are customarily posted. Copies of said Notices, on forms provided by the Board, shall be posted within five (5) days of their receipt, and alongside the Court's contempt adjudication for a period of sixty (60) consecutive days in clearly legible condition, and Respondents shall ensure that they are not altered, defaced, disparaged or covered by any other material nor shall any item be posted alongside other than material required by state, federal or local law; and Respondents shall permit an agent of the Board and the Union, without prior notice, unfettered access to Respondents' facility(s) during regular business hours of 8:30 a.m. to 5:00 p.m. to view and to photograph or otherwise document the posting;

(c) Within three (3) days of posting of the Notices and the contempt adjudication, providing the Regional Director for Board's Nineteenth Regional Office, at 915 2nd Avenue, Suite 2948, Seattle, Washington 98174-1078, a sworn written statement

**Page 3**

(d)   Within twenty-five (25) days after receiving the aforesaid Notices from the Board, having the Notice and the contempt adjudication read to the Respondents' employees by Harry Meyer during a mandatory employee meeting.  Respondents shall give the Regional Director of the Board's Nineteenth Regional Office and the Business Agent for International Brotherhood of Electrical Workers, Local 1547, 3333 Denali Street, Suite 200, Anchorage, Alaska 99503-4038, at least two (2) weeks' advance notice, in writing, to permit a Board agent and a Union representative to attend the reading, at the option of the Regional Director and the Union;

(e)   Within twenty (20) days after receiving the aforesaid Notices from the Board, mailing signed copies of the Notice and the contempt adjudication to the International Brotherhood of Electrical Workers, Local 1547, and to all current employees and to all former employees of Respondents employed since September 14, 1999. Respondents shall also provide to the Regional Director of Region 19 a list of the names and addresses of all employees and former employees to whom said documents were mailed, together with proof of mailing;

(f)   Within ten (10) days of issuance of the contempt adjudication, notifying the Union, in writing, that Respondents recognize the Union as the exclusive bargaining representative of the unit

Page 4

employees, and bargaining, upon request, with the Union;

(g)   Immediately applying to the unit employees employed by Respondents the terms of the collective-bargaining agreement between the Union and Alaska Chapter, NECA;

(h)   Within ten (10) days of issuance of the contempt adjudication, providing the Union with information it requested by letter dated September 11, 1998;

(i)   Within twenty (20) days of issuance of the contempt adjudication, providing to the Board at its Resident Office in Anchorage, located at 1007 West 3rd Avenue, Suite 206, Anchorage, Alaska 99501-1078, a copy of all payroll records, social security payment records, timecards, personnel records and reports, and all other records, including an electronic copy of such records if stored in electronic form, necessary to analyze the amount of backpay due under the terms of the Board's order, as enforced by the September 14, 1999 judgment; and

(j)   Filing a sworn statement with the Clerk of the Court, and mailing a copy thereof to the Regional Director of the Board's Nineteenth Region, within seventy (70) days after entry of the contempt adjudication, showing what steps have been taken to comply with the contempt adjudication.

3.   The Ninth Circuit reserved jurisdiction, upon failure of the Respondents to purge themselves of civil

Page 5

contempt, to issue a Writ of Body Attachment against Meyer or any such officer or agent of the Respondents or their business entities responsible for such non-compliance, and to take such other and further action and grant such other relief as may be responsible and necessary to assure compliance with the Court's judgment and the default contempt adjudication.

4.    On or about February 15, 2001, the Board filed its first Motion for Issuance of Writ of Body Attachment against Respondents Harry Meyer and/or Patrick Headley and for Reimbursement of Attorneys' Fees.

5.    On August 20, 2001, the Ninth Circuit issued a writ of body attachment against Respondent Headley [1] only as well as an order requiring both Respondent Meyer and Headley to purge themselves of their contempt of court. The Court awarded the Board costs and attorneys' fees and ordered the Board to submit its calculation of the items to the Ninth Circuit's Appellate Commissioner.

6.    On or about August 30, 2001, the Board filed its Submission for Order Fixing Attorney Fees and Expenses with the Appellate Commissioner.  At that time the Board sought $5,950.00 in attorneys' fees and related costs.  This matter is still pending before the Appellate Commissioner.

---

[1] The Court declined to issue a writ of body attachment against Meyer because he had not yet been personally served.

7.    On August 6, 2003 at 2:30 p.m., Respondent Meyer was

personally served with a package containing documents required

by the Court.

8.    On October 20, 2003, the Board filed a renewed request

for a writ of body attachment against Respondent Meyer.    The

Ninth Circuit granted the Board's motion on February 24, 2004.

9.    On March 24, 2004, deputies from the office of the

United States Marshal for Alaska arrested Respondent Harry E.

Meyer and brought him to District Court pursuant to the February

24, 2004 Writ of Body Attachment issued by the Ninth Circuit.

10.  At the March 24, 2004 hearing before United States

Magistrate Judge John D. Roberts, Respondent Meyer was ordered,

among other things, to post a cash bail of $5,000 in order to be

released from incarceration and to return to court on April 21,

2004 to be deposed.

11.  On March 30, 2004, Respondent Meyer paid the $5,000

cash bail to the Clerk of the District Court and was released

pursuant to conditions ordered by the Court on March 24, 2004.

12.  On April 21, 2004, the Board deposed Meyer in a

proceeding before the District Court.    The responses given by

Meyer were incomplete.    Accordingly, at the request of the

Board, the District Court held in abeyance the deposition and

postponed the resolution of Respondent's failure to produce his

federal tax returns pending further investigation by the Board.

13. The Board sent three post-deposition compliance letters to Respondent Meyer on April 27, 2004, May 20, 2004 and May 28, 2004. Two Internal Revenue Service forms were enclosed in the April 27, 2004 letter:

> IRS Form 4506 (Request for Copy of Tax Return), a request form for copies of tax returns by and for the individual, and IRS Form 2848 (Power of Attorney and Declaration of Representative)

IRS form 2848 would permit the Board to request and seek information directly from the IRS. Respondent Meyer failed to respond to any of the letters and failed to complete and file Form 4506 with the IRS or execute IRS Form 2848 and return it to the Board.

14. At the request of the Board in its June 10, 2004 status report, the District Court ordered Respondent Meyer to sign IRS form 2848 and to produce the sought after financial records for the time period October 1997 to date.

15. In early May 2004, the Board issued subpoenas to various governmental departments within the State of Alaska and to 69 general contractors seeking information that Respondent Meyer had failed to provide to the Board. The Board received information that Meyer held electrical and administrative licenses, and has done so on behalf of Northland Electric or Northpac Electric since at least 1995.

16. The Board also determined that Respondent Meyer

performed work on two bush airport projects in Alaska over the past two years and still had several days of work remaining on at least one airport reconstruction project. Combined, these two projects were valued well over $434,630, and were in addition to a third project that was completed in 2002 for $159,000.

17. The Board also obtained information that on October 31, 2003 Respondent Meyer transferred his personal residential property at 3660 Ruth Drive in Wasilla by quitclaim deed for $10 to Brigitte Hammelbeck, who was his girlfriend at the time.

18. On July 27, 2004, the parties appeared before the Court for a status hearing. At that time and at all times thereafter, Respondent Meyer was represented by counsel, attorney Joe P. Josephson, Esq.

19. At the July 27 hearing, Respondent Meyer produced the following financial documents from the Key Bank for a single checking account:

Statements from October 1999 through June 2004; front and backs of checks in three groupings (July 19, 2002 through December 17, 2002, February 3, 2003 through December 15, 2003, and December 31, 2003 through July 14, 2004).

Respondent advised the Court that he anticipated that financial

documents from Wells Fargo Bank would be sent to the Board in about two weeks.

20.  On or about August 3, 2004, the Board filed with the District Court copies of the documents it had provided to Respondent Meyer at the July hearing.  The documents are:

> Harry Meyer/Northland/Northpac Compliance Chart; Mailing list; September 11, 1998 letter from Local 1547 of the International Brotherhood of Electrical Union requesting specific documents from Respondent; Certificate of Compliance; September 7, 1999 judgment in *NLRB v. Northpac Electric, et al.* (No. 99-70895); October 20, 2000 Default Contempt Adjudication in *NLRB v. Northpac Electric, et al.* (No. 99-70895); February 24, 2004 Order for a writ of body attachment in *NLRB v. Northpac Electric, et al.* (No. 99-70895); and three Notice to Employees.

21.  On August 19, 2004, an agent from the Internal Revenue Service orally advised the Board that it did not have any federal tax returns filed by Harry Meyer for the tax years 1997 to date.  The IRS provided written confirmation by letter dated September 6, 2004.

22.  Respondent Meyer had not posted the performance bond with the District Court by the time the Board filed its third Status Report with the District Court on September 2, 2004. Previous reports were filed on June 10, 2004 and August 30, 2004.

23. By order dated September 9, 2004, the District Court

ordered Respondent Meyer to post a $20,000 performance bond by

September 17, 2004 or a bench warrant would issue.

24. On September 17, 2004, Respondent Meyer posted the

$20,000 performance bond.

25. A status hearing was held on October 5, 2004. The

Board advised the Court that Respondent Meyer had produced the

following documents:

> Key Bank statements for a checking account for the time
> period October 1999 through June 2004; front and backs of
> checks in three groupings (July 19, 2002 through December
> 17, 2002, February 3, 2003 through December 15, 2003, and
> December 31, 2003 through July 14, 2004); checks for the
> time period of December 28, 1998 through November 10, 1999
> but missing 1143, 1237, 1238, 1252, 1265 and 1299; copies of
> the documents to be provided to a certified public account
> by the end of October 2004.

The Board advised the Court that Respondent had failed to

produce numerous other documents. At the hearing, Respondent

agreed to produce the following items:

> The outstanding documents from the Wells Fargo Bank
> account, the National Bank of Alaska and The Stockman's Bank
> in Arizona; all deposit slips and offsets for all financial
> services accounts; list of all employees, assistants,
> independent contractors or any individuals including general
> contractor employees, who assisted him from July 1995 to
> date; documentation regarding the cessation of operations of

Page 11

Northland Electric; releases for documents in the possession of William Overly, Esq. and Valley Bookkeeping.

Case 3:04-mj-00078-JDR    Document 28-3    Filed 04/03/2006    Page 17 of 22

Respondent also agreed to sign the Notice to Employees at both locations and resend the notice and the Default Contempt Adjudication to the Union and to the following known employees: Charles Cress III, Ben Mehaffey, Alex Pete, Gordon Zartman, Vy Zartman, Ralph F. Stakler, and Brigitte Hammelbeck.

26. Based on sworn testimony of Respondent Meyer that he was no longer engaged in electrical contracting work, the Board waived the requirements that the Notice to Employees be posted at Respondent's facility and be read to his current employees.

27. On or about October 8, 2004, Respondent Meyer produced the following documents:

> National Bank of Alaska statements starting in July 1998 through December 1998; National Bank of Alaska statements starting in January 1999 through December 1999; National Bank of Alaska starting in January 2000 through December 2000; National Bank of Alaska statements starting in January 2001 through June 2001; Key Bank statements starting in June 1998 through December 1998; Key Bank statements starting in January 1999 through November 1999; National Bank of Alaska statements dated February 18, 1999 through June 1999; Sixty-four checks from the National Bank of Alaska statements for February 10, 1998 through November 22, 1998 (with most other checks written in September and October); thirty-seven checks (fronts only) from the

through December 13, 1999; twenty-eight checks issued
from Wells Fargo/National Bank of Alaska starting on
October 10, 1999 through November 29, 1999; one
hundred and fourteen checks issued from Key Bank
starting on June 30, 1998 through January 12, 1999;
one hundred and ninety checks issued from Key Bank
starting on January 22, 1999 through November 10,
1999; five checks issued from Key Bank starting on
December 15, 2000 through December 28, 2000 (two are
undated); one hundred sixty six checks issued from Key
Bank starting on February 28, 2001 through December
10, 2001; thirty-five checks issued from Key Bank
starting on January 28, 2002 through September 9,
2002; and check numbers 1112 and 1113 issued against
National Bank of Alaska.

Still missing from the financial institution were the following
documents:

All documents for the time period starting in October 1997,
excluding the documents detailed above; all deposits slips
and bank offsets regarding the financial accounts; and check
numbers 1070-1073 and 1076-1079 issued from Wells
Fargo/National Bank of Alaska starting on October 10, 1999
through November 29, 1999.

28. A hearing was held on October 20, 2004. The Board
advised the District Court that it had received some but not all
of the information ordered to be produced and that Respondent
Meyer had performed some but not all of the required actions.

Respondent provided copies of the properly signed notice and
default contempt adjudication to the Union and all of the
identified employees except one, Ms. Hammelbeck.  By letter
dated October 20, 2004 Respondent recognized the Union as the
exclusive bargaining representatives of his employees performing
work covered by the agreement.  The Board also advised the Court
that the parties had reached a tentative settlement agreement.
The parties were ordered to return to court the next day and
advise the Court if an agreement had been reached or to be
prepared to detail those documents and actions that remain
outstanding.

29.  A hearing was held on October 21, 2004, and the
parties advised the Court that a settlement agreement had been
reached.  The parties detailed the terms of the settlement
agreement.  The terms of the settlement are outline below.

## II.  Settlement Agreement

The parties agree to the following terms and conditions in
resolution of the matters between them:

1.  That this agreement resolves the instant proceedings
before the United States District Court on the Writ of Body
Attachment of Respondent Meyer (No. A04-0079 MJ (D.AK.) and No.
99-70895 (9th Cir.)), the default contempt proceedings before the
Ninth Circuit (No. 99-70895 (9th Cir.)), the attorneys' fees and
costs matter pending before the Appellate Commissioner (No. 99-

Page 14

proceeding before the Board to determine the amount of backpay
and fund contribution owed pursuant to the Ninth Circuit's 1999
judgment in Board case no. 19-CA-26167;

2.    That on October 21, 2004, Local 1547 of the
International Brotherhood of Electrical Workers took physical
possession of the 580SL Loader/Backhoe (Tractor S/N JJG0190148,
Engine S/N 45131311; Trans. S/N 1027).  The value of the backhoe
is estimated to be approximately $50,000.  The backhoe is owned
free and clear by Respondent.  IBEW Local 1547 agrees that it
will maintain the backhoe in the same or better working
condition as it was when the Union obtained physical possession
of the equipment.  A description of the backhoe is attached as
Attachment A;

3.    That on approval of this Joint Settlement Stipulation
and recommendation of the District Court by the Ninth Circuit,
ownership of the backhoe shall transfer to IBEW Local 1547;

4.    That the District Court shall retain the $20,000
performance bond and the $5,000 cash bail pending final action
by the Ninth Circuit and that the terms of Respondent Meyer's
release shall remain in effect until then;

5.    That on approval of this Joint Settlement Stipulation
and recommendation of the District Court by the Ninth Circuit,
the $20,000 performance bond, plus any interest should there be

bail, plus any interest should there be any, shall be remitted to Respondent Meyer;

6.    That Respondents Meyer and Northpac Electric shall abide by the terms and conditions of the 2004-2007 Inside Agreement of the Alaska Electrical Construction between Local Union 1547 International Brotherhood of Electrical Workers and the Alaska Chapter National Electrical Contractors Association, Inc. should Respondent engage in work covered by that agreement.

7.    That the parties agree that the District Court and the Ninth Circuit may grant such other relief as may be just, reasonable, and proper to assure compliance with the Court's judgment.

8.    That the parties have agreed to filing a joint motion for entry of an order approving this Joint Settlement Stipulation and seeking a recommendation by the District Court to the Ninth Circuit for approval of this settlement agreement.

Signature Page Next Page

Page 16

### SIGNATURE PAGE

NORTHPAC ELECTRIC AND HARRY
MEYER d/b/a/ NORTHLAND ELECTRIC

NATIONAL LABOR RELATIONS BOARD

_____
Joe P. Josephson, Esq.
Counsel for Respondent

_____
Joan A. Sullivan
Senior Trial Attorney
(202) 273-3742 (direct)

Josephson & Associates
912 West Sixth Avenue
Anchorage, Alaska  99501
(907) 276-0151
(907) 276-0155 (facsimile)

Contempt Litigation &
   Compliance Branch
1099 14th Street, N.W., Suite 10700
Washington, D.C.  20570
(202) 273-3740 (main)
(202) 273-4244 (facsimile)

Dated this 15th day of
December, 2004 in Anchorage,
Alaska.

Dated this 16th day of December,
2004 in Washington, D.C.

HARRY E. MEYER

_____
Harry E. Meyer
Northland Electric
Northpac Electric

Dated this 10th day of
Nov., 2004 in Anchorage,
Alaska.

Attachment

[NPESettlmentstipulation.doc]